Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/20/2018 09:11 AM CST

State of Nebraska, appellant,
v. Jason T. Gibson, appellee.
___ N.W.2d ___

Filed November 13, 2018.    No. A-17-1272.

1. **Sentences: Appeal and Error.** When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court reviews for an abuse of discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.
3. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.
4. **Sentences: Judgments.** If an oral pronouncement of sentence is invalid but the written judgment imposing sentence is valid, the written judgment is looked to and considered controlling.
5. **Sentences: Appeal and Error.** Neb. Rev. Stat. § 29-2322 (Reissue 2016) sets forth the factors that an appellate court is to consider when reviewing a sentence alleged to be excessively lenient.
6. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.
7. **Sentences: Probation and Parole.** Where no mandatory minimum term of imprisonment is statutorily required, a term of probation is a viable alternative, unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant,

the court finds imprisonment is necessary for protection of the public because the defendant is likely to reoffend, the defendant is in need of correctional treatment most effectively provided through commitment to a correctional facility, or the seriousness of the crime would be depreciated by a lesser sentence.

8. **Sentences.** To issue a lesser sentence upon a conviction because another person may be more culpable detracts from the requirement that the sentencing court consider the nature and circumstances of the present crime and the characteristics of the offender before it.

Appeal from the District Court for Sarpy County: Stefanie A. Martinez, Judge. Sentence vacated, and cause remanded with directions.

Phil Kleine, Deputy Sarpy County Attorney, for appellant.

Donald L. Schense, of Law Office of Donald L. Schense, for appellee.

Pirtle, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Jason T. Gibson was sentenced to 180 days' incarceration and 5 years' probation on his conviction for attempted first degree sexual assault of a child, a Class II felony. The State of Nebraska has appealed the sentence, claiming that the district court for Sarpy County abused its discretion in imposing an excessively lenient sentence. Because we agree, we vacate the sentence, and remand the cause with directions.

## BACKGROUND

Gibson was initially charged with first degree sexual assault of a child, a Class IB felony which carries a mandatory minimum sentence of 15 years in prison for the first offense. See Neb. Rev. Stat. § 28-319.01 (Reissue 2016). In exchange for Gibson's agreement to plead no contest, the State amended the charge to attempted first degree sexual assault of a child, a Class II felony.

At the plea hearing, the State set forth the factual basis as follows:

> [B]etween December 1st of 2016, and January 31st of 2017, DeArch Stubblefield was prostituting out an individual by the name of E.L., [born in June 2001]. E.L. stated that between December 1st, 2016, and January 31st, 2017, . . . Stubblefield and her were picked up by a male party later identified as . . . Gibson. That male then drove them to his house . . . in Sarpy County, Nebraska.
>
> . . . .
>
> [T]here all three parties involved engaged in intercourse, which happened on the couch. During this meeting, money was exchanged after the sexual intercourse. The intercourse would include sexual penetration or penile penetration of . . . Gibson of E.L.
>
> E.L. was later, during an investigation, shown a photo lineup and identified the Defendant, . . . Gibson. . . . Gibson was later interviewed and he further admitted to having sexual intercourse with E.L. on the couch at [this location].

Based upon the above factual basis and a finding that the plea was made knowingly, intelligently, and voluntarily, the court accepted the plea and found Gibson guilty of attempted first degree sexual assault of a child. Gibson agreed to the plea despite being incorrectly advised by the district court that a Class II felony carried a maximum minimum sentence of 1 year's incarceration. A presentence investigation (PSI) was ordered.

The PSI revealed that the present offense was Gibson's first criminal activity for which he was charged. All testing and assessments placed him in the low risk to reoffend category. He had been a member of the U.S. Air Force for 16 years, receiving commendable reviews and numerous honors. Upon contact from the police, he immediately admitted his acts, although he continually denied that he was aware of

the victim's true age, claiming that both she and Stubblefield admitted to misrepresenting her age.

According to the PSI, Gibson became involved in this incident by responding to a "Craigslist" posting that advertised an opportunity to join two other people for a sexual encounter. Gibson admitted that he made all arrangements through Dearch Stubblefield, the individual who posted the advertisement, and that he paid Stubblefield $40 after the sexual encounter. Gibson's description of the encounter discloses that after arriving at Gibson's house, Stubblefield directed E.L. to take off her clothes and that E.L. did not engage in any discussion with Gibson during the encounter. The PSI also includes a "Memorandum" authored by Gibson and directed to the sentencing court. In it, Gibson points out that he was misled by both Stubblefield and E.L. as to their ages and he describes what he has lost as a result of this incident, but mentions nowhere the effects on the victim, E.L.

At the sentencing hearing, the court stated:

I can hope that the system does what it is designed to do, and in my reading of the [PSI], it indicates to me that . . . Stubblefield has, in large part, the majority of the responsibility, from the materials I've received. And my hope is that [E.L.] is given some sort of justice in that sentence, most significantly.

The court proceeded to sentence Gibson, stating:

There is [sic] a number of issues that I believe your attorney has addressed that qualifies mitigating circumstances in your circumstance in this case. I also agree that there is an element of punishment as well for your choice in this matter. I do think that you have accepted responsibility. I think you appreciate the seriousness of your actions, although most probably because you've now suffered consequences that were not contemplated at the time that you made this choice.

The court concluded, "[I]t's going to be the order and judgment of the Court that you serve a term of incarceration at the

Sarpy County Jail for 180 days. There will be a term of probation for five years to be served upon completion of that jail time." A written "Order of Probation (Jail confinement)" was entered the same day, sentencing Gibson to 5 years of "[t]raditional" supervised probation, subject to numerous conditions, including a 180-day term in the Sarpy County jail. Gibson was also ordered to comply with the Sex Offender Registration Act. The State timely filed this appeal.

## ASSIGNMENTS OF ERROR

The State assigns that the sentence imposed was excessively lenient because the district court (1) failed to appropriately apply Neb. Rev. Stat. § 29-2322 (Reissue 2016) and (2) based its sentence upon improper, impermissible, and nonrelevant considerations.

## STANDARD OF REVIEW

[1,2] When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court reviews for an abuse of discretion. *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

## ANALYSIS

Before addressing the merits of the State's appeal, we address two separate issues: the sentence actually imposed and the appropriate statutory provisions to be considered.

*Sentence Imposed.*

Pursuant to a plea agreement, Gibson was convicted of attempted first degree sexual assault of a child, a Class II felony. See Neb. Rev. Stat. § 28-201 (Supp. 2017) and § 28-319.01(1). In its oral pronouncement at sentencing, the court sentenced Gibson to 180 days in jail, to be followed by

5 years of probation. However, Class II felonies are punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Supp. 2017). Therefore, if the court intended to sentence Gibson to incarceration, it was plain error to do so for less than 1 year, nor could it sentence him to incarceration and impose a subsequent term of probation. See Neb. Rev. Stat. § 29-2260 (Reissue 2016) (allowing court to impose period of probation in lieu of incarceration in certain situations).

[3] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). Because the sentence pronounced was statutorily unauthorized, it was invalid and constitutes plain error.

[4] Despite its oral pronouncement, the court subsequently entered an "Order of Probation (Jail confinement)" on the day of sentencing. In that order, the court imposed a 5-year probation period and included incarceration for 180 days in the Sarpy County jail as a condition of the probation. Such a sentence is valid. See § 29-2260. If an oral pronouncement of sentence is invalid but the written judgment imposing sentence is valid, the written judgment is looked to and considered controlling. *State v. Brauer*, 16 Neb. App. 257, 743 N.W.2d 655 (2007). Because the written order is a valid sentence, we determine that Gibson was sentenced to probation that included 180 days' incarceration as a condition thereof.

*Applicable Statutory Provisions.*

[5] The State assigns that "the sentence imposed was excessively lenient because the Court failed to appropriately apply . . . §29-2322." However, § 29-2322 sets forth the factors that an *appellate court* is to consider when reviewing a sentence alleged to be excessively lenient. Those factors include (1) the nature and circumstances of the offense; (2) the history and

characteristics of the defendant; (3) the need for the sentence imposed to afford deterrence; (4) the need for the sentence to protect the public from further crimes of the defendant; (5) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (6) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (7) any other matters appearing in the record that the appellate court deems pertinent.

[6] Section 29-2322 does not govern what factors the sentencing court is to consider, although many of the factors overlap. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016).

In the context of this appeal in which the court sentenced Gibson to probation, the statute governing a sentencing court's decision to withhold incarceration is also implicated. Section 29-2260 states:

(2) Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

(3) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

The question before us then becomes whether the sentencing court abused its discretion in imposing probation instead of sentencing Gibson to incarceration. See *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999).

*Adequacy of Sentence Imposed.*

[7] A Class II felony carries a possible sentence of 1 to 50 years' imprisonment, but no mandatory minimum is required, although Gibson was erroneously advised during the plea hearing that a mandatory minimum of 1 year existed. Because no mandatory minimum was required, a term of probation was a viable alternative, unless, having regard to the nature and circumstances of the crime and the history, character, and condition of Gibson, the court found imprisonment was necessary for protection of the public because Gibson was likely to reoffend, he was in need of correctional treatment most effectively provided through commitment to a correctional facility, or the seriousness of the crime would be depreciated by a lesser sentence. See § 29-2260(2).

The record supports the sentencing court's decision to impose probation in lieu of incarceration based upon Gibson's unlikelihood to reoffend and the availability of treatment; however, § 29-2260 requires an additional consideration, that being the nature of the crime and whether probation would depreciate its seriousness or promote a disrespect of the law.

It is clear from both the factual basis offered in support of the plea and the information contained within the PSI that E.L. was the victim of sex trafficking, as described by the State, with Stubblefield as her "pimp" and Gibson as one of her customers. The dissent attempts to diminish Gibson's culpability by describing the incident as "a case of a sexually active high school couple who made an irresponsible decision," but that description perpetuates the antiquated misperception that persons who are held out for sexual pleasure by third parties are not victims. And it disregards the conviction and sentence of Stubblefield for attempted human trafficking that was recently summarily affirmed by this court on September 11, 2018, in case No. A-18-159.

As admitted to by Gibson, Gibson responded to a Craigslist posting made by Stubblefield, Gibson made all arrangements

through Stubblefield, Stubblefield was the one who directed E.L. to remove her clothing, and it was Stubblefield whom Gibson paid. The reality of the situation is that Gibson, age 40 at the time, engaged in first degree sexual assault of a child facilitated online, through a third party, and then sought leniency for having been mistaken as to her age. While we recognize the attributes of Gibson and his lack of a prior criminal history, the seriousness of the offense leads us to conclude that a term of probation depreciates the seriousness of the offense and promotes disrespect of the law.

As set forth above, the factors we consider in determining whether a sentence is excessively lenient include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to afford deterrence; (4) the need for the sentence to protect the public from further crimes of the defendant; (5) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (6) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (7) any other matters appearing in the record that the appellate court deems pertinent. See § 29-2322.

Taking the above factors into consideration—particularly the nature and circumstances of the offense; the need to afford deterrence for this type of crime; and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment—we conclude that a term of probation was excessively lenient.

*Consideration of Improper,*
*Impermissible, and*
*Irrelevant Factors.*

The sentencing court's decision was based in part upon Stubblefield's involvement and culpability in the crime. The

State claims this was improper, and we agree. Before sentencing Gibson, the court stated:

> I can hope that the system does what it is designed to do, and in my reading of the [PSI], it indicates to me that . . . Stubblefield has, in large part, the majority of the responsibility, from the materials I've received. And my hope is that [E.L.] is given some sort of justice in that sentence, most significantly.

Nowhere in our statutes, nor in our case law, is a sentencing judge instructed to consider whether the victim will be "given some sort of justice" in the sentence of another wrongdoer when crafting a sentence for the particular defendant before the court. We recognize that where two or more defendants are convicted for the same offense and different penalties are inflicted, it is appropriate for an appellate court to examine the evidence to determine whether there are justifiable reasons for differences in sentences rendered. See *State v. Morrow*, 220 Neb. 247, 369 N.W.2d 89 (1985). However, Gibson is the sole defendant in this matter, and at the time of sentencing, there was no evidence presented regarding the nature of the charge against Stubblefield, whether he had been convicted or sentenced, or the nature of the sentence if one had been imposed.

[8] The court's focus should have been on Gibson and his conviction for attempted first degree sexual assault of a child, taking into consideration all the circumstances of this case. To issue a lesser sentence because another person may be more culpable detracts from the requirement that the sentencing court consider the nature and circumstances of the present crime and the characteristics of the offender before it. Consideration of whether E.L. will be "given some sort of justice" through the sentencing of Stubblefield was not an appropriate factor to consider and appears to have resulted in a more lenient sentence for Gibson. We find that the sentencing court abused its discretion when it considered this factor.

## CONCLUSION

We conclude that the district court abused its discretion by imposing an excessively lenient sentence and considering an irrelevant factor when imposing sentence upon Gibson. We vacate the sentence and remand the cause to the district court with directions to impose a greater sentence. The sentence should be imposed by a different district court judge than the original sentencing judge.

Sentence vacated, and cause
remanded with directions.

Bishop, Judge, dissenting.

In my review of the record, this case seems less a "sex trafficking" case (as characterized by the State and the majority opinion), and more a case of a sexually active high school couple who made an irresponsible decision to experiment with their sexuality by engaging in two "threesome" sexual encounters which Stubblefield arranged through Craigslist. One of those two encounters included Gibson. Stubblefield, age 18 at the time, attended the same high school as E.L., and the two had been sexually active with each other for about 6 months when Stubblefield proposed the threesome sexual encounters, to which E.L. agreed. Because E.L. was about 5 months shy of turning 16, she could not legally consent to those encounters. According to E.L., Stubblefield wanted to "explore his sexuality." Contrary to the majority's assertion, my description above does not attempt to diminish Gibson's culpability, nor is it based on an antiquated misperception. Rather, it simply sets forth information contained in the record before us. But no matter how we might frame the facts, my dissent is driven by our standard of review. When reviewing a trial court's imposition of a sentence, this court's review must be constrained to determining only whether the trial court abused its discretion. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant

of a substantial right and denying a just result in the matters submitted for disposition. *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012). The record in this case supports the district court's decision to impose probation; accordingly, its decision is not "clearly untenable," meaning it is not clearly indefensible, unsound, or flawed. See *id.* at 257, 811 N.W.2d at 697.

Most notably, at the sentencing hearing, the district court referred to the "number of issues" Gibson's attorney addressed at the hearing which qualified as "mitigating circumstances" for Gibson. These remarks included the attorney's statement that he had "helped [Gibson] in his divorce" years ago, so he had known Gibson for a number of years. Gibson's attorney then pointed out the following: Gibson had given "16 honorable years of service" in the U.S. Air Force; the courtroom was "full of people" supporting Gibson; there were "in excess of 30 letters [written] attesting to [Gibson's] good character and reputation"; Gibson was honest and cooperative when contacted by the police—he accepted responsibility "from day one"; Gibson was "extremely embarrassed, ashamed, and remorseful for his actions"; the PSI shows "an individual who has exemplified what is the best of people" but also that "we are all prone to make mistakes, some more serious than others"; there were "pages of [Gibson's] awards, his decorations, his performance reports, all showing what a valued, trusted airman he was" in the Air Force; the clinical psychologist's letter noted Gibson was "not classif[ied] as a pedophile under DSM-5"; Gibson had no criminal history; Gibson had "very low risk assessment totals" under the categories of education, employment, family, companions, alcohol, drugs, criminal attitude, and antisocial; the administrative discharge proceedings that will take place will result in the forfeiture of Gibson's career in the Air Force after 16 years; all of Gibson's sex offender risk assessment totals were very low; Gibson would have to register as a sex offender; and Gibson posed little, if any, risk to society in the future.

Gibson's attorney acknowledged that Gibson had "a great lapse in judgment" when he went to Craigslist and responded to "an ad with some people who purportedly were representing themselves to be of a certain age." Gibson's attorney pointed out that subjecting Gibson to the terms and conditions required under probation would not show disrespect for the law or diminish the severity of the crime and that Gibson and society would be better served by placing him on probation and giving him an opportunity to better himself and be a productive member of society. Gibson personally informed the court that he was "extremely remorseful," not just for what he was going to lose, or for letting down his coworkers, but also for E.L. and her family.

The PSI states that Gibson "has a spotless criminal record other than his current legal situation" and that "[i]t appears that his behavior in this offense would be out of character for . . . Gibson."

The district court found that Gibson had accepted responsibility for and appreciated the seriousness of his actions. In addition to the 180 days in jail, the 5 years of probation will require Gibson to comply with numerous conditions. These include the following: obey all laws and report any violation by the next business day; avoid social contact with persons having criminal records or who are currently on probation or parole; report to probation when directed and permit the probation officer to visit at all times and places; reside within the state unless otherwise authorized by the probation officer; obtain permission before changing address or employment; cooperate in all matters which might affect probation and truthfully answer all inquiries from the probation officer; maintain suitable employment; abstain from the use of alcohol or controlled substances (unless prescribed by a physician); cannot be present in any location where the primary business is to serve alcohol or attend any social function at which alcoholic beverages are served without permission

from the probation officer; submit to random chemical testing of blood, breath, or urine; submit to random searches and seizures of the person, premises, or vehicle without a warrant and whether or not probable cause exists upon the request of a probation officer or law enforcement officer when authorized by the probation officer; pay all fines, court costs, and fees; complete a psychosexual evaluation and follow all recommendations; continue therapy and medication management; attend any support group if deemed necessary by the probation officer; have no contact with the victim during the life of the probation; participate in "moral reconation" therapy; have no unfiltered access to the internet or to any social media sites; have no contact with children under the age of 18; have no relationships with any individuals who have children under the age of 18; and submit to regular search and seizure of the person, property, or vehicle, to include electronic devices.

Despite these numerous requirements and restrictions on Gibson's life for the duration of his probation, the majority nevertheless concludes the district court abused its discretion by failing to impose incarceration instead of probation. The majority acknowledges that "[t]he record supports the sentencing court's decision to impose probation in lieu of incarceration based upon Gibson's unlikelihood to reoffend and the availability of treatment . . . ." However, the majority then focuses on "the nature of the crime and whether probation would depreciate its seriousness or promote disrespect of the law." It is difficult to imagine that the district court saw the crime as any less serious than this court, and it is not clear why a 5-year probation sentence on this record promotes disrespect for the law. To the contrary, the record before us fully supports the district court's decision to order probation when considering all sentencing factors, as well as those specific factors favoring withholding a sentence of imprisonment as set forth in § 29-2260(3).

The majority also states that the district court's decision was improperly "based in part upon Stubblefield's involvement and culpability in the crime" and that this "was not an appropriate factor to consider and appears to have resulted in a more lenient sentence for Gibson." I do not read the district court's comment that it hoped E.L. "is given some sort of justice in [Stubblefield's] sentence, most significantly" to suggest that this was a factor the court relied upon when sentencing Gibson to probation. That comment could certainly mean that the district court expected Stubblefield to be more significantly sentenced than Gibson and that this would result in a greater impact in terms of justice for E.L. However, that does not necessarily mean the court allowed consideration of Stubblefield's potential sentence to influence its decision when sentencing Gibson. And given the abundance of favorable information presented to the district court to support a sentence of probation, the district court's comment hardly rises to an abuse of discretion.

As noted in Gibson's brief, "While there is a temptation on a visceral level to conclude that anything less than incarceration depreciates the seriousness of crimes of this sort, it is the function of the sentencing judge, in the first instance to evaluate the crime and the offender." Brief for appellee at 13. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Brown*, 300 Neb. 57, 912 N.W.2d 241 (2018). And as this court recently stated when denying relief in an excessively lenient sentence appeal involving a 4-year combined sentence for a defendant convicted of two drug offenses and three firearm offenses:

Although [the defendant's] history [three prior felony convictions] and the nature and circumstances of the present offenses certainly could have supported a longer term of incarceration [the defendant faced up to

250 years' imprisonment], when reviewing sentences for excessive leniency, we do not review the sentence de novo and the standard is not what sentence we would have imposed.

*State v. Felix*, 26 Neb. App. 53, 60, 916 N.W.2d 604, 609 (2018) (noting abuse of discretion standard of review applies whether reviewing sentence for leniency or excessiveness). Accordingly, adhering to the abuse of discretion standard of review applicable to this court's review of Gibson's sentence, and finding no abuse of discretion by the district court, I would affirm Gibson's conviction and sentence.