276 Neb. 942
STATE OF NEBRASKA, APPELLEE,
v.
JOSHUA L. ALBERS, APPELLANT.
No. S-07-1322.
Court of Appeals of Nebraska.
Filed December 19, 2008.
Steven J. Twohig, of Twohig Law Office, P.C., L.L.O., for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Joshua L. Albers pled no contest in the county court for Dodge County to misdemeanor charges of attempted terroristic threats, false reporting, and third degree assault. Prior to sentencing, Albers sought unsuccessfully to preclude the prosecutor from reviewing the presentence investigation report (PSI). Albers was sentenced to imprisonment for 365 days on each of the counts, with the sentences to be served concurrently. Albers appealed to the district court for Dodge County, which affirmed the county court's rulings. Albers appeals to this court and asserts that his sentences are excessive. He also asserts that the county court erred in overruling his motion to preclude review of the PSI by the prosecuting attorney and that the district court erred in affirming such ruling. Finding no error, we affirm.

STATEMENT OF FACTS
The charges against Albers arose from an incident that occurred on February 11, 2007, in Fremont, Nebraska. Dale White, his wife, and their 7-year-old daughter were in a pickup stopped at a sign inside a mall parking lot. Albers turned into the parking lot driving his car at a high rate of speed and nearly hit White's pickup. White responded by "flipping off" Albers. White drove his pickup out of the parking lot and onto an adjoining road. Albers turned his car around to follow White. White stopped on the side of the road and got out of the pickup. White saw Albers' car approaching and threw a frozen plastic pop bottle at Albers' car, breaking the passenger side mirror. Albers stopped his car and approached White's pickup with a gun. Albers pointed the gun at White's wife and daughter, who were still inside the pickup. Albers pointed the gun in White's direction and fired but told White that the gun was not real. The record indicates that the gun was a "starter pistol" that fired blanks. Albers returned to his car and left after hearing sirens from a police car that was responding to a call placed to the 911 emergency dispatch service by White's wife. After leaving, Albers hid the gun and called the police to make his own report. Police found Albers in the mall parking lot.
The State charged Albers with attempted terroristic threats, false reporting, and third degree assault in connection with the incident. Albers pled no contest, and the county court found Albers guilty on all three counts.
Prior to the sentencing hearing, Albers moved for closed proceedings on the basis that private mental health information would be disclosed at the hearing and public dissemination of such information would be unduly prejudicial to him. Albers also moved for an order to preclude "the prosecuting authority from reviewing, receiving or obtaining any privileged information contained within the [PSI]" prepared in Albers' case. The county court sustained Albers' motion for closed proceedings, but overruled his motion to preclude the county attorney from reviewing the PSI. The court stated, however, that any information in the PSI that should not be discussed in open court could be identified and would be protected. The court thereafter sentenced Albers to jail for 365 days on each of the three convictions and ordered the sentences to be served concurrent with one another.
Albers appealed to the district court. In his statement of errors, Albers asserted that the county court imposed excessive sentences and erred in overruling his motion to preclude review of the PSI by the prosecuting authority. The district court affirmed Albers' sentences after concluding that the county court did not abuse its discretion by imposing the sentences. The district court further concluded that the PSI had been properly submitted to the county court and that therefore any comment the county attorney made at the sentencing with regard to the PSI merely repeated information already available to the court.
Albers appeals the district court's affirmance of the rulings by the county court.

ASSIGNMENTS OF ERROR
Albers asserts that the district court erred in (1) affirming the county court's overruling of his motion to preclude review of the PSI by the prosecutor and (2) finding that the sentences imposed by the county court were not excessive.

STANDARDS OF REVIEW
[1] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. State v. Hense, ante p. 313, 753 N.W.2d 832 (2008).
[2] Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. State v. Draganescu, ante p. 448, 755 N.W.2d 57 (2008).

ANALYSIS

Prosecutors Are "Others Entitled by Law" to Receive Information in Presentence Investigation Report.
The statute at issue in this case is Neb. Rev. Stat. § 29-2261(6) (Cum. Supp. 2006), which provides in relevant part as follows:
Any presentence report . . . shall be privileged and shall not be disclosed directly or indirectly to anyone other than a judge, probation officers to whom an offender's file is duly transferred, the probation administrator or his or her designee, or others entitled by law to receive such information, including personnel and mental health professionals for the Nebraska State Patrol specifically assigned to sex offender registration and community notification for the sole purpose of using such report or examination for assessing risk and for community notification of registered sex offenders. . . . The court may permit inspection of the report or examination of parts thereof by the offender or his or her attorney, or other person having a proper interest therein, whenever the court finds it is in the best interest of a particular offender.
Albers asserts that under § 29-2261(6), a court must find that it is in the best interest of a defendant before the court allows a prosecutor to review the PSI. Albers claims that the county court erred when it failed to make such a determination in this case and that the district court erred when it affirmed the county court's ruling. We conclude that there is no merit to Albers' argument.
In the lower courts and on appeal, Albers' argument focuses on the last portion of § 29-2261(6), which provides that a "court may permit inspection of the [PSI] by the offender or his or her attorney, or other person having a proper interest therein, whenever the court finds it is in the best interest of a particular offender." Relying on this language, Albers claims that before permitting the prosecutor to inspect the PSI, the county court was required but failed to consider whether such inspection was in Albers' best interest. Contrary to Albers' reading of the statute, we conclude that under the first sentence of § 29-2261(6), a prosecutor is included in the category of "others entitled by law to receive" the information in the PSI and that therefore the sentencing court is not required to make a determination of the defendant's best interest before allowing the prosecutor to review the PSI.
The first sentence of § 29-2261(6) sets forth the general proposition that information in a PSI is privileged and is not to be disclosed to anyone other than those persons listed. As we read the statute, it provides that those persons listed are exceptions to the general rule of nondisclosure and are entitled to disclosure without a determination of whether such disclosure is in the best interest of the defendant. The portion of the statute on which Albers focuses gives the court discretion to allow inspection of the PSI by additional individuals having a proper interest only after the court has found that such disclosure is in the best interest of the defendant. This latter portion of the statute applies only to those individuals who are not already entitled to disclosure under the first sentence of § 29-2261(6). The individuals "entitled by law" to review the PSI are not subject to a best interest analysis.
In view of the foregoing, the issue before us is whether a prosecutor is a person "entitled by law" to disclosure under the first sentence of § 29-2261(6). The first sentence of the statute specifically lists, inter alia, judges, probation officers, and mental health professionals for the Nebraska State Patrol as persons entitled to disclosure. Prosecutors are not specifically listed.
In analyzing § 29-2261(6), we note first that in State v. Owen, 1 Neb. App. 1060, 1086, 510 N.W.2d 503, 520 (1993), the Nebraska Court of Appeals stated that "[n]either the legislative history nor the case law citing § 29-2261 sheds any light on who might comprise the group of `others entitled by law to receive such information.'" In Owen, the Court of Appeals determined that jurors in a criminal trial were not "others entitled by law to receive such information." We agree that neither the legislative history of § 29-2261 nor the case law prior to Owen sheds light on who might comprise the group of "others entitled by law to receive such information." We further observe that case law since Owen is not helpful.
A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. State v. Bossow, 274 Neb. 836, 744 N.W.2d 43 (2008). Because we cannot reject the phrase "others entitled by law to receive such information" as superfluous or meaningless, we determine that a group of such "others" was intended by the Legislature to exist. For the reasons discussed below, we conclude that prosecutors are included in the group comprising "others entitled by law" to disclosure of the information in the PSI.
It has been observed that the PSI serves several functions, including providing information to the court to assist in the imposition of a appropriate individualized sentence based on knowledge of the convicted person's background and character which may not otherwise be available to the sentencing court, especially in a plea-based conviction. See, generally, State v. Grandberry, 619 N.W.2d 399 (Iowa 2000); Buchea v. Sullivan, 262 Or. 222, 497 P.2d 1169 (Or. 1972); State v. LeClaire, 175 Vt. 52, 819 A.2d 719 (Vt. 2003); Stephen A. Fennell and William N. Hall, Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts, 93 Harv. L. Rev. 1615 (1980). The sentencing hearing has been identified as a critical stage of the criminal proceedings. Mempa v. Rhay, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967). At sentencing, the defendant is entitled to counsel, id., and the prosecutor is expected to participate in a meaningful manner. See Burns v. United States, 501 U.S. 129, 111 S. Ct. 2182, 115 L. Ed. 2d 123 (1991).
While we have not been directed to definitive authority in Nebraska stating that the PSI should be disclosed to the prosecution, we note that treating prosecutors as individuals entitled to access to the PSI is commonplace. In the federal courts, Fed. R. Crim. P. 32(e)(2) requires that the "probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government . . . ." (Emphasis supplied.) We further observe that it is common in other states for a statute or court rule to specifically provide that prosecutors are allowed or required to have access to a PSI. See, Ala. R. Crim. Proc. 26.3(c) (2003); Alaska R. Crim. Proc. 32.1(b)(3) (2007); Ariz. R. Crim. Proc. 26.6(a) (2008); Colo. Rev. Stat. Ann. § 16-11-102(1)(a) (West 2006); Conn. R. Crim. Proc. § 43-7 (2008); Del. Super. Ct. R. Crim. Proc. 32(c)(3) (2008); D.C. Super. Ct. R. Crim. Proc. 32(b)(3) (2008); Fla. R. Crim. Proc. 3.713 (West 2007); Haw. Rev. Stat. § 706-604(2) (Cum. Supp. 2007); Idaho Crim. R. 32(g)(1) (2008); 730 Ill. Comp. Stat. Ann. 5/5-3-4(b)(2) (LexisNexis 2007); Ind. Code Ann. § 35-38-1-12(a) (LexisNexis 1998); Iowa Code Ann. § 901.4 (West 2008); Kan. Stat. Ann. § 21-4605(a)(1) (2007); La. Code Crim. Proc. Ann. art. 877(A) (2008); Md. Code Ann., Corr. Servs. § 6-112(a)(3)(iii) (2008); Mass. R. Crim. P. 28(d)(3) (West 2006); Mich. Comp. Laws Ann. § 771.14(5) (West 2006); 49 Minn. R. Crim. Proc. 27.03, subd. 1 (West 2006); Mont. Code Ann. § 46-18-113(1) (2007); Nev. Rev. Stat. § 176.156(1) (2007); N.M. Rules Ann. 5-703 (2008); N.C. Gen. Stat. § 15A-1333(b) (2007); Ohio Rev. Code Ann. § 2951.03(D)(1) (LexisNexis 2006); Okla. Stat. Ann. tit. 22, § 982(D) (West 2003); Or. Rev. Stat. § 137.079(1) (2007); Pa. R. Crim. P. 703(A)(2) (West 2008); R.I. Super. Ct. R. Crim. P. 32(c)(3); S.D. Codified Laws § 23A-27-7 (2004); Tenn. Code Ann. § 40-35-208 (2006); Tex. Code Crim. Proc. Ann. art. 42.12, sec. 9(f) (Vernon 2008); Vt. R. Crim. P. 32(c)(3) (2003); Wash. Super. Ct. Crim. R. 7.1(a)(3) (West 2008); W.V. R. Crim. P. 32(b)(6); and Wis. Stat. Ann. § 972.15(4m) (West 2008).
In a case that involved Fed. R. Crim. P. 32, the U.S. Supreme Court stated that the rule "contemplates full adversary testing of the issues relevant to a . . . sentence and mandates that the parties be given `an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'" Burns v. United States, 501 U.S. at 135. Thus, the apparent purpose of allowing or requiring access to the PSI by the prosecutor is to improve the sentencing process by allowing the prosecutor to be informed of all relevant considerations when advocating for a particular sentence and, if appropriate, to challenge information within the report.
We believe that Nebraska law also contemplates an adversary testing of issues relevant to sentencing and our appellate rules of practice so indicate. Where the PSI is material to issues on appeal, this court's rules allow the prosecutor access to the PSI. Neb. Ct. R. App. P. § 2-116(B) provides:
In all cases where a presentence report may be material on appeal, the defendant, his or her counsel, or counsel for the State may request the sentencing judge to forward it to the Supreme Court Clerk. In each instance, the sentencing judge shall cause a copy of the report to be forwarded to the Clerk in a separate sealed envelope. The defendant, his or her counsel, or counsel for the State may examine the report, but it may not be removed from the office of the Clerk.
Rule 2-116(B) allows the "State," as prosecutor, access to the PSI to facilitate the prosecutor's preparation of its appellate arguments regarding material issues relevant to the PSI and sentencing. It logically follows that information in a PSI would be material to issues relating to sentencing at the trial level, and it is reasonable that the prosecutor should have access to such information at the time of sentencing.
Sentencing is a critical stage of a criminal proceeding, Mempa v. Rhay, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967), and the information in a PSI is relevant to sentencing. In order to facilitate full adversary testing of issues relevant to sentencing, it is necessary for the prosecutor to have access to information in the PSI in order to evaluate factors relevant to sentencing and make informed arguments to the court regarding the proper sentence. For these reasons, we conclude that prosecutors are among the "others entitled by law to receive" the information in a PSI under § 29-2261(6).
We conclude as a matter of law that because prosecutors are "entitled by law to receive" the information in the PSI, it is not necessary under § 29-2261(6) for a court to determine whether it is in the best interest of the defendant before allowing the prosecutor access to the PSI. We therefore conclude that the county court did not err in overruling Albers' motion to preclude review of the PSI by the prosecuting authority and that the district court did not err in affirming such decision.

The Sentences Imposed Are Not Excessive.
Albers asserts that the county court imposed excessive sentences and that the district court erred in affirming such sentences. The sentences were within statutory limits, and we conclude that the sentences imposed were not an abuse of discretion and therefore not excessive. See State v. Draganescu, ante p. 448, 755 N.W.2d 57 (2008).
Albers was convicted of attempted terroristic threats under Neb. Rev. Stat. § 28-311.01 (Reissue 1995) (terroristic threats) and Neb. Rev. Stat. § 28-201 (Cum. Supp. 2006) (criminal attempt), false reporting under Neb. Rev. Stat. § 28-907 (Cum. Supp. 2006), and third degree assault under Neb. Rev. Stat. § 28-310 (Reissue 1995). Terroristic threats is a Class IV felony under § 28-311.01(2), and therefore attempted terroristic threats is a Class I misdemeanor under § 28-201(4)(e). False reporting and third degree assault are also Class I misdemeanors under § 28-907(2)(a) and § 28-310(2), respectively. The maximum sentence of imprisonment for a Class I misdemeanor is 1 year. Neb. Rev. Stat. § 28-106(1) (Cum. Supp. 2006). Albers was sentenced to imprisonment for 365 days on each count with the sentences to be served concurrently. Therefore, Albers' sentences were within statutory limits.
When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. State v. Kinkennon, 275 Neb. 570, 747 N.W.2d 437 (2008). In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. State v. Reid, 274 Neb. 780, 743 N.W.2d 370 (2008). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. Id.
Albers argues that the county court failed to adequately consider factors including his age and background and certain aspects of the incident that gave rise to the charges against him. He notes that he was 18 at the time of the incident and had gone through an "extraordinary struggle" in his youth, including numerous juvenile placements and an undiagnosed head injury. With regard to the circumstances of the offense, Albers places a significant amount of blame for the incident on White, asserting that White fueled Albers' actions by flipping him off and by throwing a projectile at Albers' vehicle and breaking the side passenger mirror. Albers also states that he used a "cap gun" to threaten White rather than using "an actual firearm capable of inflicting actual damages." Finally, Albers compares his sentencing to other cases which he claims are roughly comparable and in which lesser sentences were imposed.
At the sentencing hearing, the county court made little comment regarding the reasons behind its sentencing; however, in response to a comment made by counsel for Albers in which the court was urged to consider Albers'"juvenile issues" and "medical issues," the court responded that such issues were "the reason why I'm not going to give him three years." We read this comment to indicate that the factors urged by Albers were in fact considered by the court and prompted the court to order the sentences to be served concurrently rather than consecutively.
The PSI includes other information relevant to the court's sentencing decision. The PSI indicates that Albers' history included juvenile dispositions over 6 years which will not be repeated here. Albers' adult criminal history included convictions for criminal trespass, disturbing the peace, second degree criminal trespass, and third degree assault, all of which occurred within the year prior to the incident giving rise to the charges in this case. Albers' adult criminal history also included several traffic offenses, including a charge of engaging in a speed contest which occurred after the incident in this case. The probation officer who prepared the PSI opined that the risk was substantial that Albers would engage in additional criminal conduct during a period of probation and that Albers was in need of correctional treatment that could be provided most effectively by commitment to a correctional facility. The probation officer strongly recommended that Albers be given a straight sentence and asserted that a lesser sentence would depreciate the seriousness of the offense. The PSI also included statements from White, his wife, and his daughter regarding the effect the incident had on the family, particularly the effect on the 7-year-old daughter.
With regard to Albers' argument that the county court imposed a lesser sentence in another case, we have stated that in an appeal that does not involve a death sentence, "the issue in reviewing a sentence is not whether someone else in a different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one." State v. Philipps, 242 Neb. 894, 897, 496 N.W.2d 874, 877 (1993). The other case to which Albers referred does not control our evaluation of the appropriateness of the sentence in this case.
Finally, Albers makes no argument that the county court factored improper considerations into its sentencing decision. Based on the factors noted above, we determine that the county court did not abuse its discretion by imposing concurrent sentences of 365 days' imprisonment for the three convictions, and we conclude that the district court did not err in affirming such sentences.

CONCLUSION
We conclude that prosecutors are among the "others entitled to receive" information from the PSI under § 29-2261(6) and that therefore the county court did not err in overruling Albers' motion to preclude review of the PSI by the prosecuting authority. We further conclude that the county court did not abuse its discretion and that the sentences imposed are therefore not excessive. We therefore conclude that the district court did not err in affirming the foregoing rulings, and we affirm the decision of the district court.
AFFIRMED.